WINFIELD G. SMALL, ADMINISTRATOR *vs.* CLARA NELSON.

Kennebec.     Opinion, November 27, 1940.

*McLean, Fogg & Southard*, for plaintiff.
*Locke, Campbell & Reid*, for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

STURGIS, C. J.    This is an action of general assumpsit brought by Winfield G. Small as administrator of the estate of John Small, late of China, Maine, deceased, to recover moneys belonging to the intestate which, in his lifetime, came into the possession of Clara Nelson and were appropriated to her own use. The declaration is, in form, a count in indebitatus assumpsit with specifications alleging that the moneys were fraudulently obtained by undue influence. The plea is the general issue with specifications that all of the moneys which came into the defendant's possession, and were retained by

her, were gifts from the intestate. After verdict against her for $938.80, the defendant filed a general motion for a new trial.

The transcript of the evidence shows that the decedent, John Small, was a bachelor about ninety years old, who, having lived alone on his farm in China the greater part of his life, sometime in November, 1937, having become enfeebled by age and afflicted with a complication of diseases including a rectal cancer, came to live and end his days in the family of the defendant, Clara Nelson, who was his cousin, had lived with him when she was a child, and with whom through the years he had maintained most friendly relations. Although his next of kin were four nephews and nieces, apparently he was on more intimate terms with and had more affection for his cousin and, when he broke down and could no longer take care of himself, desired and sought her care and attention.

In March of the spring of 1938, the old gentleman was so incapacitated that he became bedridden and remained so until the following July 10, 1938, when he died. During this period, the defendant prepared his food, attended to his personal needs, and, with the assistance of her husband and other persons who came in on call, had the entire care of her cousin. In course of time, it became necessary for her, under the direction of the family physician, to apply a local anaesthetic to relieve the pain of his cancerous condition, and finally an opium alkaloid known as codeine was substituted and its use continued until the end. Some of his nephews and nieces occasionally called to see him but their visits were more or less formal and of short duration. It was the defendant upon whom he depended for the care and attention which his condition demanded, and it was upon her alone he relied for any necessary or desired advice or assistance in his property or other personal affairs.

The intestate was not a wealthy man. His farm upon which he had lived was worth about $1,500.00, it is stated, and when he came to live with his cousin he had a little more than $1,300.00 in the Augusta Savings Bank. This, except for furniture of small value, was all the property he owned. On April 12, 1938, a month after he became bedridden, with the assistance of Clara Nelson and her husband he drew $100.00 from his savings account and used it for current expenses. On June 28, he drew $300.00 more out of the bank and gave it to his cousin. And on July 6, 1938, by an order payable to

Clara Nelson and drafted by her husband, which bore the legible but scrawly signature of John Small, she drew out of the bank the $938.80 which remained on deposit, took possession of it, and now claims that he gave it to her. The personal representative of the intestate brings this action to recover back these moneys which made up and were withdrawn from his savings account in the Augusta Savings Bank.

The evidence clearly warrants the finding which the jury evidently made that the $100.00 which John Small drew out of the bank on April 12, 1938, was not appropriated by the defendant, Clara Nelson, and she is not accountable therefor. The withdrawal of the $300.00 made on June 28, 1938, and the subsequent gift of the money to his cousin was also deemed valid by the jury, and it cannot be held that their finding in this regard was manifestly wrong. There is evidence in the case which indicates that, although at that time the intestate was very ill and in a weak mental and physical condition, this gift was voluntary and free from undue influence.

As we read the record, however, we find that the condition of the intestate appears to have been quite different when, eight days later, on July 6, 1938, and only four days before he died, the defendant, Clara Nelson, withdrew the last of his moneys from the savings bank and took it into her possession. He had been failing rapidly for several days and, by reason of his age, the ravages of his diseases and the continued use of opiates, appeared at times to be in a stupor and was extremely weak in mind and body. This was his condition when his cousin withdrew this money from the bank. Her testimony regarding the incident is as follows:

"Q. Tell about that order, how did he happen to give that order to you?
A. Well, I had got my work done and I was in the bedroom. And he said, I would like for you to come in, I would like to talk with you. I said, is there anything you want uncle John, — well, if he didn't I thought that there was something that he wanted for himself. And I set down so I could hear what he was saying. I put my chair side of his bed. And he said to me, I am a pretty sick man and I am not going to live long. Now, he said, I would like you to go to

the Augusta Savings Bank and draw out every dollar there is in the bank and put it in the bureau. I said to him, — my husband was going to the village, — I want Mr. Nelson to hear this. He was up the road, and I called him back so he could hear, and he came back. . . . I said, come in, uncle John wants to talk with you. So he came in. And he came in the room and Mr. Small repeated to him just what he said to me, every word. And I told him, when I was talking with him, I said, you may need that uncle John, you may feel better. And he said, Oh, no, all will come straight and all good. That is just what he said.

Q. After that conversation, did you go to Augusta?
A. Yes, sir.
Q. And get the money?
A. Yes, sir.
Q. What did you do with the money?
A. I got that money ; it was done up, all done up in paper and all sealed up. And I carried it to him and I said, uncle John here is that money, this is your money, take it. And he said, take it it is yours individually.
Q. What did you do with the $928?
A. I put it in the bureau drawer, right in his room.
Q. After he died, what did you do with it?
A. I took it to the bank. .
Q. And deposited it?
A. Yes, sir.

          ✳          ✳          ✳          ✳

Q. In whose name did you deposit the money?
A. My own. Just as he told me to in my name. It is the Federal Bank in Waterville."

This claim of the defendant, Clara Nelson, that her cousin gave her the entire balance of his savings account finds no corroboration in the record. Her husband does state that she called him into John Small's sick room and he heard the old gentleman say that he wanted her to go to the bank and draw out every dollar there and bring it back, but he does not confirm her assertion that, when the money was produced, it was given to her as her own. Assuming,

however, that the intestate made a gift of all that remained of his savings to the defendant, as she claims, and she put it into the bureau drawer of his room, over which she and not he had actual control, and thereafter treated it as her own, this alone does not establish a valid gift.

Whenever the relations between two persons are such that one is completely dependent and relies upon and necessarily reposes confidence in the other, a fiduciary or confidential relation exists and the law implies a condition of superiority held by the one over the other so that in every transaction between them in the nature of a deed, gift, contract, or the like by which the superior party obtains a possible benefit, the existence of undue influence and the invalidity of the transaction is presumed and the burden of proof is cast upon the one who receives the benefit to show by clear evidence that he or she acted with entire fairness and the other party acted independently with full knowledge and of his own volition free from undue influence. *Gerrish, Ex'r* v. *Chambers*, 135 Me., 70, 189 A., 187; *Mallett* v. *Hall*, 129 Me., 148, 150 A., 531; *Eldridge* v. *May*, 129 Me., 112, 150 A., 378; *Burnham* v. *Heselton*, 82 Me., 495, 500, 20 A., 80; *Woodbury* v. *Woodbury*, 141 Mass., 329, 5 N. E., 275.

In the case at bar, there can be no doubt that a confidential relation existed between the intestate, John Small, and his cousin, Clara Nelson, and the gift of the last of his moneys, which she here claims he made to her, is governed by the rules just stated. Guided by these rules, the jury found that the gift was void. There is evidence tending to show that the intestate was grateful for the services his cousin was performing, and on occasions had indicated an intention to give all his property to her when he died, but that he knowingly of his own volition made the gift in controversy in accordance with that intention and as a partial predistribution of his estate or as compensation for her care and ministrations remained to be proved. It was for the jury to weigh the evidence and determine whether it overcame the presumption that the gift was invalid. Apparently, they were convinced that the gift was tainted with undue influence. It cannot be held on this record that the verdict was clearly wrong.

*Motion overruled.*